ORIGINAL



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

LITMAN, ASCHE & GIOIELLA, LLP,

                       Plaintiff,

      -v-

CHUBB CUSTOM INSURANCE CO. and
EXECUTIVE RISK INDEMNITY, INC.,

                       Defendants.

------------------------------------------------------x

04 Civ. 7087 (GEL)

**OPINION AND ORDER**

- 91512

Richard M. Asche, Litman, Asche & Gioella, LLP,
New York, NY, for plaintiff.

William Pollard, III, Mark Platt, Alexander H.
Shapiro, Kornstein Veisz Wexler & Pollard, LLP,
New York, NY, for Defendants.

GERARD E. LYNCH, District Judge:

      Litman, Asche & Gioiella, LLP ("LA&G"), a New York law firm, brings this action against two insurance companies, Chubb Custom Insurance Company and Executive Risk Indemnity, Inc. (collectively "Chubb"), for unjust enrichment, promissory estoppel, and breach of implied-in-fact contract. In essence, LA&G seeks to receive payment for services rendered to its client, Charles B. Spadoni, for whom it claims Chubb is required to reimburse legal fees under a Directors and Officers ("D&O") insurance policy issued by Chubb to Spadoni's employer, Triumph Capital Group, Inc. ("Triumph"). Both parties agree that the case is ripe for decision on the undisputed documentary facts submitted by the parties, and both parties cross-move for summary judgment in whole or in part on the present record. Chubb's motion will be granted, and LA&G's denied.

## BACKGROUND

Chubb insured Triumph, a Boston-based fund manager company, and some of its executives, under a D&O policy. The policy did not obligate Chubb to defend Triumph or its officers, but rather, it provided reimbursement of defense costs for eligible claims against the company and its directors and officers.

Triumph, its president, Frederick McCarthy, and its general counsel, Spadoni, came under investigation by a federal grand jury in Connecticut in 1999, and were ultimately indicted on various charges growing out of a scheme to bribe the State Treasurer. Triumph asserted a claim under the D&O policy, seeking payment of defense costs relating to the investigation. Chubb advanced the defense costs, while reserving the right to disclaim coverage and seek recoupment of its payments.

As the investigation wore on, disputes developed among the parties regarding Chubb's willingness to advance defense costs. These disputes were settled by agreements entered in June and July 2002. In the June agreement, Chubb promised to "advance to Triumph" funds to pay for defense costs "that Chubb believes . . . reimbursable" under the policy, while reserving "the right to determine whether [expenses incurred after February 28, 2002] are reimbursable." (Pollard Aff. Ex. D at 5, 6.)

Following this agreement, Spadoni retained LA&G as his new defense counsel, and entered the July agreement with Chubb. The July agreement, which was negotiated by LA&G attorneys on behalf of Spadoni, modified the June agreement, providing that Chubb would advance Spadoni's legal fees directly to LA&G and setting up an agreed budget and system for submitting LA&G invoices to Chubb. (Pollard Aff. Ex. E. at 2-3.) LA&G asserts, and Chubb

2

does not deny, that during these negotiations, it specifically represented to Chubb that it was a small firm that needed assurances that it would be paid as fees were incurred. Accordingly, the parties agreed that Chubb would pay LA&G's bills without scrutinizing their reasonableness, in return for LA&G's agreement to cap its fees and to agree to a specific budget and payment schedule. (Id. at 3.) The July agreement, however, specifically provided that Chubb's obligations remained subject to the terms of the D&O policy and "Chubb's ongoing reservations of rights[,] . . . including the right to seek recoupment from the insureds of advanced Defense Costs if it ultimately determines that there is no coverage under the Policies for the criminal action." (Id.) The agreement further expressly stated, "This agreement is between Chubb and Mr. Spadoni. This agreement shall not be construed or interpreted to create any contractual relationship or obligations between Chubb and LA&G." (Id.)

In September 2003, Chubb advanced defense costs to LA&G for Spadoni's pre-trial fees accrued through June 2003. (P. Rule 56.1 Stmt. at 4.) At trial, Spadoni and Triumph were convicted of various crimes relating to the bribery scheme. In light of the trial evidence, Chubb concluded that under a provision in the policy excluding claims based on the receipt of illegal profit or advantage by an insured, it was not obligated to pay Spadoni's defense costs, and had the right to recoup its advances from Spadoni. (D. Mem. 6.) Accordingly, Chubb ceased paying for Spadoni's defense, although LA&G continued to represent him and provide legal services. Chubb also sued Spadoni (as well as Triumph and McCarthy) in the Massachusetts state courts seeking recoupment of its advances. Spadoni counterclaimed, seeking continuation of his benefits under the policy. (Id. at 7.)

3

Subsequently, LA&G brought this action in this Court, asserting claims against Chubb in contract, unjust enrichment, and estoppel.

## DISCUSSION

I. Venue

As an initial matter, Chubb argues that the Court should dismiss this action and defer to the action in Massachusetts, on two separate grounds. First, it notes that a venue provision in the June 2002 agreement requires that any claim under that agreement should be brought in Massachusetts. Second, it argues that this action is duplicative of the Massachusetts action, and that permitting LA&G to assert its claims here would subject Chubb to the possibility of inconsistent outcomes.

These arguments are without merit. First, the June and July 2002 agreements are by their terms agreements between Chubb and Spadoni. LA&G is not a party to those agreements. Accordingly, LA&G has attempted to plead around those agreements, resting its claims instead on quasi-contractual equitable theories of unjust enrichment and estoppel, and on an alleged implied contract between LA&G and Chubb distinct from the written agreements between Chubb and Spadoni. Chubb maintains that these claims are really rooted in the Chubb-Spadoni agreements. However, to determine that issue, the Court must address LA&G's claims on their merits. To hold that LA&G is bound by the venue provisions of the Chubb-Spadoni agreement in effect begs the question that LA&G seeks to present to the Court.

Second, for similar reasons, this action is not duplicative of the Massachusetts action and does not threaten Chubb with inconsistent outcomes. LA&G is not a party to the Massachusetts action, which will adjudicate the respective rights of Spadoni and Chubb. If Chubb prevails, it

will no longer be obligated to advance fees for Spadoni's defense, and will be entitled to recover from Spadoni any funds advanced on his behalf. In this action, however, LA&G contends that Chubb has independently incurred obligations to *it*. These claims are not present in the Massachusetts action. There would be no inconsistency between judgments holding that Chubb is entitled to recoupment from Spadoni, and that Chubb has incurred a separate obligation to LA&G.

Accordingly, there is no basis for dismissing this action in favor of actual or hypothetical lawsuits in Massachusetts. The Court therefore proceeds to the merits.

II. Summary Judgment

Summary judgment must be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party, and the Court must resolve all ambiguities and draw all reasonable inferences in its favor. Id. at 255; Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995).

To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[C]onclusory allegations or unsubstantiated speculation" will not suffice. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998). Rather, the nonmoving party must "set forth specific facts showing that there is a

genuine issue for trial." Fed. R. Civ. P. 56(e). See Matsushita, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") Here, there is no dispute about the facts set forth above, and both parties assert that summary judgment on their respective claims is appropriate as a matter of law.

A. Unjust Enrichment

LA&G asserts that it is entitled to recover from Chubb in unjust enrichment, arguing that its rendering of legal services to Spadoni conferred a benefit on Chubb by "discharg[ing] defendants['] obligations under its policies with Triumph." (Compl. ¶ 42.) This claim misconceives the relationships among the parties.

As LA&G's formulation of the claim implicitly recognizes, the essence of unjust enrichment is that the plaintiff has conferred a benefit on the defendant for which the defendant, in justice and equity, should be obligated to pay, even in the absence of an express agreement between the parties. Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001). It is thus axiomatic that for a plaintiff "to recover for unjust enrichment, defendants must in fact be enriched." 22A N.Y. Jur. 2d Contracts § 512. Here, LA&G conferred no benefit on Chubb. There is no question that LA&G is entitled to be paid for the services it performed, but the beneficiary of those services was Spadoni, not Chubb. As LA&G was well aware, having negotiated the July 2002 agreement on behalf of Spadoni, Chubb was not obligated under the policy to defend Spadoni, and thus had no obligation to retain or pay lawyers on his behalf. Rather, its only obligation was to reimburse Spadoni for fees he incurred in his own defense. Although Spadoni would have been disadvantaged had LA&G refused representation, Chubb

6

would have been none the poorer.

LA&G unsuccessfully relies on Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660 (2d Cir. 1996), to support its argument. In Newman & Schwartz, the law firm sued not an insurer, but its client's employer (or to be more precise, the employer's corporate parent), which had a contractual obligation to its employee to defend him. The defendant employer thus received a benefit in having its obligation to defend the employee discharged, and in having its subsidiary and its employee exonerated. Newman & Schwartz, 102 F.3d at 661, 663. In this case, however, Chubb had no obligation to defend Spadoni, and had no interest in whether Spadoni was successfully defended. Spadoni was the only beneficiary both of LA&G's services and of the insurance policy's conditional reimbursement benefit.

LA&G contends that by providing legal services to Spadoni, LA&G helped Chubb to "acquit[ ] itself of that important responsibility." (P. Br. 16.) This argument is illogical, however. Chubb's obligation to Spadoni, even under LA&G's interpretation of the policy, was to reimburse Spadoni, not to get him a lawyer. By providing legal services to Spadoni, for which *Spadoni* was obligated to pay, LA&G helped to *create* Chubb's obligation to reimburse Spadoni, not to satisfy its obligations. Had Spadoni chosen to represent himself, Chubb would have incurred no obligation to pay attorneys' fees. It is thus difficult to understand how LA&G's provision of services to Spadoni assisted Chubb in fulfilling its responsibilities under the policy.

Finally, LA&G argues at some length that the exclusion clause on which Chubb relied in ceasing its payments does not apply, or that at a minimum, issues of fact exist regarding the policy's meaning or effect. (P. Br. 17-22.) However, this argument, whatever its merits, goes to whether or not Chubb is obligated to continue to reimburse Spadoni under the D&O policy,

which is the issue in the Massachusetts action. That question is not relevant to the instant lawsuit. If Chubb wrongfully ceased payment, in violation of the insurance policy, then Chubb has wronged Spadoni, not LA&G, and will presumably be ordered by the Massachusetts court to recommence its payments. This Court's analysis of the unjust enrichment claim assumes that Chubb owes an obligation to Spadoni, and questions only whether LA&G conferred a benefit on Chubb, separate and apart from any contractual obligations between Spadoni and his lawyers, or between Chubb and Spadoni. The merits of the dispute between Chubb and Spadoni about the policy exclusion have no bearing on that question.

B. Estoppel

LA&G further claims that Chubb "is estopped from claiming lack of coverage as a ground for refusing to pay [it] for the period prior to February 2004," when Chubb decided against coverage. (P. Br. 22.) This claim muddles two different notions of estoppel, and is without merit.

First, as discussed above, Chubb's claim of lack of coverage is a matter between Chubb and its insureds. Since LA&G is not a party to the policy, it has no stake in whether coverage does or does not exist. Chubb's assertion of lack of coverage is the basis for its disavowal of paying benefits to Spadoni, and LA&G has no standing to contest the correctness of Chubb's reasons for denying coverage. In any event, it is difficult to understand how Chubb can be estopped from asserting lack of coverage. LA&G cites no occasion on which Chubb agreed or stated that coverage existed. On the contrary, Chubb repeatedly emphasized that its advancing of fees to Triumph and its officers was not a concession of coverage, and that it reserved its rights to disavow coverage and seek recoupment of fees from its insureds. Thus, even if LA&G were in a

8

position to argue the coverage issue, there is no merit to the claim that Chubb is estopped from relying on a denial of coverage.

Second, the above formulation of the estoppel argument does not state a cause of action, but at best argues that Chubb is estopped from asserting a possible defense to an action based on the policy. What LA&G really means to argue is that Chubb's promise to pay LA&G's invoices creates a *promissory* estoppel. See Restatement (Second) of Contracts § 90(1). This is another equitable alternative to contractual relief, which is based not on the restitutionary notion of a benefit conferred on the defendant (as in unjust enrichment) but on a reliance interest of the plaintiff. When a plaintiff justifiably relies to its detriment on a promise by the defendant, even in the absence of consideration or some other prerequisite to contractual liability on the promise, the plaintiff is entitled to recover for the damage it suffered in reliance on the promise.

Nonetheless, the essence of promissory estoppel is that the reliance be *justifiable*. Id. at § 90 cmt. a; Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996). The July 2002 agreement between Spadoni and Chubb, which LA&G negotiated and of which it was fully aware, expressly stated that it was "subject to . . . Chubb's ongoing reservations of rights." (Pollard Aff. Ex. E at 3.) This language unquestionably incorporates Chubb's reservation in the June 2002 agreement, of which the July 2002 agreement constitutes a modification, of the "right to determine whether fees, costs and other charges incurred by Defense Counsel [after February 28, 2002] are reimbursable." (Pollard Aff. Ex. D at 5.) Chubb thus unequivocally put its insureds and their defense counsel on clear notice that it had not yet determined whether it was obligated under the policy to pay defense costs, and expressly reserved the right to disclaim coverage for those costs in the future. Nor is it correct, as LA&G argues, that "the only *remedy*

9

that Chubb sets forth in its reservation of rights is the right to seek '*recoupment from its insureds of advanced defense costs . . . .*'" (P. Br. 23; plaintiff's emphasis.) To the contrary, in the July agreement Chubb expressly reserved "*all* of its rights under the Policies and applicable law, *including* the right to seek recoupment." (Pollard Aff. Ex. E at 3; emphasis added.) Given this language, no reasonable person could have relied on Chubb's willingness to advance fees in July 2002 as an irrevocable promise to continue paying on the policy indefinitely for any legal services provided by defense counsel.

Chubb's promises in the July 2002 agreement are expressly hedged. Chubb promised to abide by certain terms in advancing fees, for as long as it continued to believe that advances were appropriate. The promises were always subject to the express warning that it reserved the right to terminate its advances and seek recoupment from the insureds of advances already made, should it determine that coverage was excluded. Of course, Chubb's determination of exclusion is not final. If Chubb is incorrect, the insured can enforce a correct interpretation of the policy by legal action, such as the action now pending in Massachusetts. But neither Spadoni nor LA&G could justifiably rely on such a limited promise as if the express limitation did not exist. Thus, LA&G cannot maintain that it undertook the representation in reasonable reliance on the expectation that Chubb was committed to continue advancing fees indefinitely. Nor, in view of the ethical restrictions on lawyers' right to withdraw from representation in the middle of a criminal case, see Code of Professional Responsibility DR 2-110(A), can LA&G maintain that it continued to represent in reliance on Chubb's continued commitment to pay outstanding invoices, or in the expectation that Chubb would prospectively announce any change in its position on coverage in order to give LA&G an opportunity to stop providing services. Indeed,

even after Chubb did give notice of its change of position, LA&G has continued to provide legal services to Spadoni.

C. Implied Contract

Finally, LA&G asserts a claim based on implied-in-fact contract. Even if the July 2002 agreement is not itself a contract between it and Chubb, LA&G argues that the existence of the agreement constitutes an offer by Chubb to pay LA&G for its services. LA&G asserts that it accepted by performance, thereby triggering an obligation by Chubb to continue to pay for those services, at least until Chubb's revocation of its "offer" by its disavowal of coverage in February 2004. (P. Br. 24-26.)

This somewhat convoluted theory also fails, essentially for the same reasons as LA&G's other theories. The July 2002 agreement unequivocally states that it "shall not be construed or interpreted to create any contractual relationship *or obligations* between Chubb and LA&G." (Pollard Aff. Ex. E at 3; emphasis added.) It takes a heroic effort to construe this writing as "part of a course of conduct constituting an offer to [LA&G] to perform services, in return for which [LA&G] would be compensated." (P. Br. 24-25.) The case LA&G cites in support of its argument, Levy v. Lucent Technologies, Inc., 01 Civ. 3946 (MBM), 2003 WL 118500 (S.D.N.Y. Jan. 14, 2003), is unpersuasive. Levy involved an employment contract, where the employer's behavior implied an offer that the court held to be accepted when the employee began providing services to the employer. Id.. at *1-8. Nothing in the case suggests that its reasoning would apply where the very conduct that the employee purports to construe as an offer includes an express statement that the conduct in *not* intended to create any obligations to the employee. Id. at *1-8.

11

The document in question is not a draft contract, expressly declared to be non-binding, to which the parties later have recourse to fill in the terms of an implied contract created by performance. The July 2002 agreement is absolutely clear about what it is and what it is not. In that agreement, Spadoni, represented by LA&G, agreed with Chubb about the terms on which advances would be made under the policy. The agreement provided that Chubb would make payments directly to LA&G, according to specific terms and conditions, but always subject to Chubb's express reservation of a right to disavow coverage, discontinue payment, and seek recoupment. The terms of payment undoubtedly included provisions that were inserted at the behest of LA&G, as a condition of LA&G's agreement to represent Spadoni. The agreement is explicit, however, not only that Chubb's promises are contingent, but also that they are made only to Spadoni. Even if it could be argued that the negotiated agreement between Spadoni and Chubb incorporated the results of a negotiation between Chubb and LA&G over the details of payment, (a) the agreement nevertheless expressly and effectively disclaims the creation of any obligation to LA&G, and (b) that negotiation inevitably concerned the details of payment – timing, review for reasonableness, budget – and not the overarching question of whether Chubb was obliged to pay at all. The agreement explicitly reserved Chubb's right to disclaim coverage under that policy, and referred the broader issue of Chubb's obligations to the D&O policy itself.

D. Issues Not Addressed

For all of the above reasons, LA&G has no rights against Chubb, and summary judgment is awarded in favor of defendants. As is clear from the Court's venue decision, this action does not involve an interpretation of the contract between Chubb and Triumph, and this Court does not in any way address what rights Spadoni may have under that policy. Whether Chubb is or is

not obligated to pay under the policy is the question before the Massachusetts court. If that court disagrees with Chubb's position, Chubb will be obligated to pay for Spadoni's defense, and LA&G's fees will presumably be paid under the policy. Otherwise, LA&G must look to its client for payment of any unpaid fees. Finally, it should be noted that Chubb has asserted no claims whatsoever against LA&G, as its right to recoupment lies also only against Spadoni, and not against his lawyers.

## CONCLUSION

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted, and judgment will be entered dismissing the complaint.


Dated: New York, New York
April 15, 2005

*[signature]*
GERARD E. LYNCH
United States District Judge